# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SEATTLE POWERSPORTS, LLC d/b/a
LAWLESS HARLEY-DAVIDSON OF RENTON,**
        **Plaintiff,**

v.                                                    Case No. 20-CV-311

**HARLEY-DAVIDSON MOTOR CO., INC.,**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff, a former Harley-Davidson dealer ("Renton"), alleges breaches of contract and a duty of good faith and fair dealing against Harley-Davidson Motor Co. ("HDMC"). HDMC has moved for summary judgment and to stay discovery, arguing that this action is barred by a release agreement signed by Renton that encompasses Renton's claims. For the reasons that follow, HDMC's motion for summary judgment is **GRANTED**.

### I. BACKGROUND

In December 2013, Plaintiff acquired a Harley-Davidson motorcycle dealership operating in the Renton, WA market, contracting with HDMC ("Dealer Contract") to operate as a franchised Harley-Davidson dealer. ECF No. 58, ¶ 1.[1] According to the complaint, HDMC intentionally failed to supply Renton with enough new motorcycles for Renton to meet customer demand in its market and sell enough new motorcycles to meet its obligations to HDMC, despite Renton's repeated requests for more inventory. *See* ECF No. 1, ¶¶ 20-36. Renton further alleges that it sold its dealership franchise for significantly less than it would have had the promised inventory been provided, which HDMC subsequently supplied to

---

[1] HDMC disputes that Renton was a "franchise" as the term is generally understood, characterizing Renton as a "new vehicle dealership of Harley Davidson motorcycles." *See* ECF No. 58, ¶ 1.

Renton's successor, TMCL, Inc. ("TMCL"). *Id.*, ¶¶ 37-38. Renton sold its dealership to TMCL on November 13, 2018. ECF No. 55, Resp. ¶ 5; ECF No. 58, ¶ 4.

In operating the dealership, Renton entered into agreements with Eaglemark Savings Bank ("ESB") whereby ESB purchased from Renton retail sales installment contracts ("Retail Plan Account Financing Agreement"), "GAP protection policies," and servicing plans bought by Renton customers. *See* ECF No. 58, ¶¶ 9-11. On November 9, 2018, Renton entered into an Assignment and Assumption Agreement with ESB, Harley-Davidson Credit Corp. ("HDCC"),[2] and Lawless Powersports, LLC d/b/a Lawless Harley-Davidson of Scott City ("Scott City")[3] by which Renton's remaining rights and obligations under the Retail Plan Account Financing Agreement with ESB were assigned to Scott City. *Id.*, ¶¶ 13-15, 18. *See also* ECF No. 56, ¶¶ 12-13 (declaration of Jeffrey Cheek); ECF No. 52-1 (copy of the Assignment and Assumption Agreement); ECF No. 54 at 5-9 (explaining remaining contingent liabilities between Renton and ESB). The Assignment and Assumption Agreement includes the following provision:

> **21. Release, Waiver and Covenant Not to Sue.** Assignor [Renton] hereby waives, releases, agrees not to sue, and forever discharges ***HDCC, ESB and their affiliates***, officers, employees, agents and attorneys from all actions, causes of action, claims, defenses, setoffs, counterclaims and demands, known or unknown, in law or equity which it had, now has or could, shall or might have had against HDCC, ESB, or any of their affiliates, officers, employees, agents, and attorneys, **by reason of any matter, cause or thing whatsoever** *related to this Agreement, the Loans, amounts and terms outlined in the attached exhibits or <u>any other</u> documents, <u>related transactions, relationships, acts or omissions</u> from the beginning of time to the date of this Agreement*.

---

[2] HDMC is a subsidiary of Harley-Davidson Motor Company Group, LLC, which itself is a subsidiary of Harley-Davidson, Inc. HDCC is a subsidiary of Harley-Davidson Financial Services, Inc., which itself is also a subsidiary or Harley-Davidson, Inc. Both HDMC and HDCC are thus subsidiaries of and under the common control of Harley-Davidson, Inc. *See* ECF No. 55, Resp. ¶¶ 8-10.

[3] Scott City is a Harley-Davidson dealership-franchise in Scott City, MO, which is owned in part by Jeffrey Cheek, who was also a part-owner of Renton. *See* ECF No. 58, ¶¶ 12, 18; ECF No. 60, ¶¶ 9-12.

ECF No. 52-1 at 4, ¶ 21 (emphasis added). Also included is a provision that the Assignment and Assumption Agreement "shall be construed and enforced in accordance with and governed by the laws of Nevada." *See id.*, ¶ 20.

Renton filed this action against HDMC on August 23, 2019 in the Western District of Washington, alleging breach of contract, breach of a duty of good faith and fair dealing, various Washington state law violations, and promissory estoppel, all relating to the Dealer Contract. ECF No. 1, ¶¶ 39-85. On February 7, the District Court granted in part and denied in part HDMC's motion to dismiss, dismissing Renton's state law and promissory estoppel claims. ECF No. 37 (adopting report and recommendation at ECF No. 32). The Court also granted HDMC's request to transfer the case to this District under 28 U.S.C. § 1404(a). *Id.* HDMC subsequently moved for summary judgment and to stay discovery, arguing that the release clause above is a threshold issue and bars Renton's action in its entirety.[4] ECF Nos. 43 & 47. Renton argues that the release language is inapplicable to its Dealer Contract claims or, at the very least, is ambiguous and requires extrinsic evidence to determine its reach. *See* ECF No. 49 (Renton's Rule 56(d) motion for discovery).

## II. STANDARD OF REVIEW

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). While appellate courts

---

[4] Judge Tsuchida declined to reach the merits of this issue in his Report and Recommendation. ECF No. 32 at 11 ("[T]he Assignment (and Release contained therein) is not properly subject to judicial notice and will not be considered at this stage of the litigation. Were the Court to consider this extrinsic evidence, it would in fact convert the motion to dismiss into a motion for summary judgment, which the Court is not willing to do.").

3
Case 2:20-cv-00311-LA   Filed 09/15/20   Page 3 of 9   Document 62

often remand a denial of additional time for discovery when the motion for summary judgment is filed before the close of discovery, courts will deny a Rule 56(d) request due to either (1) the moving party's failure to pursue discovery diligently before the summary judgment motion, or (2) the apparent futility of the requested discovery. *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 865-66 (7th Cir. 2019) (citing cases).

### III. DISCUSSION[5]

**A. Applicable law**

A federal court sitting in diversity generally applies the choice-of-law rules of the state in which it sits. *In re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)). When a diversity case is transferred by defendant's motion, the law of the transferor district is applied as if there had been no more than "a change of courtrooms." *Soo Line R. Co. v. Overton*, 992 F.2d 640, 643 (7th Cir. 1993) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 639–40 (1964)). Thus, when a federal court transfers a case under § 1404(a), the original forum's choice-of-law rules still apply. *See Eckstein v. Balcor Film Inv'rs*, 8 F.3d 1121, 1126 (7th Cir. 1993) (citing cases). *See also* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.). Accordingly, I will apply Washington choice-of-law rules.

The Assignment and Assumption Agreement contains a provision indicating that the agreement "shall be construed and enforced in accordance with and governed by the laws of Nevada."[6] Washington courts generally enforce choice-of-law clauses. *Brown v. MHN*

---

[5] Though HDMC does not challenge jurisdiction, I note that HDMC is a Wisconsin corporation with its principal place of business in Wisconsin and Renton is a citizen of New York and Florida for diversity purposes. ECF No. 60, ¶¶ 8-14. Plaintiff also properly alleges an amount in controversy greater than $75,000. *See* ECF No. 1. Accordingly, I have jurisdiction of this matter under 28 U.S.C. § 1332.

[6] The provision also contains a forum selection clause for state or federal court in either Carson City or Washoe County, Nevada, however neither party has asserted this condition. *See Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 743 (7th Cir. 2007) (enforcement of a forum selection clause is not jurisdictional).

*Gov't Servs., Inc.*, 178 Wash.2d 258, 263 (2013) (citing *McKee v. AT&T Corp.,* 164 Wash.2d 372, 384 (2008)). Washington law will apply instead if (1) without the provision, Washington law would apply; (2) the chosen state's law violates a fundamental public policy of Washington; and (3) Washington's interest in the issue's determination materially outweighs the chosen state's interest. *Id.* (citing *McKee*). A choice-of-law provision will be enforced unless all three of these conditions are met. *McKee*, 164 Wash.2d at 384.

The parties do not meaningfully address the choice-of-law issue. HDMC cites Wisconsin case law, briefly refers to Nevada law in its reply, and offers no argument on the choice-of-law issue. Renton asserts that Washington law applies, then cites Wisconsin law throughout the body of its brief, briefly applying Washington and Nevada law at its end. Both sides assert that their desired result is achieved based on the plain language of the provision, regardless of which law is applied. Because neither side has demonstrated nor is it clear that (1) Washington law would apply absent the choice-of-law clause, (2) basic Nevada contract law somehow violates a fundamental public policy of Washington, or (3) Washington's interest outweighs that of Nevada, I will defer to the parties' choice of Nevada law in interpreting the release language at issue.

**B. Release clause**

Interpretation of a contract is a question of law. *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003). Generally, when a release is unambiguous, it must be construed from the language contained within it. *In re Amerco Derivative Litig.*, 252 P.3d 681, 693 (Nev. 2011) (citing *Chwialkowski v. Sachs,* 834 P.2d 405, 406 (Nev. 1992)). *See also Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 21 (Nev. 2001) ("Where 'a written contract is clear and unambiguous on its face, extraneous evidence cannot be introduced to explain its meaning.'") (quoting *Geo. B. Smith Chemical v. Simon*, 555 P.2d 216, 216 (Nev. 1976)). However, when a

contract term or provision is ambiguous, the court can look to extrinsic evidence to clarify the ambiguous language. *Ringle v. Bruton*, 86 P.3d 1032, 1037 (Nev. 2004). A contract is ambiguous when it is subject to more than one reasonable interpretation. *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007). A basic rule of contract interpretation is that "[e]very word must be given effect if at all possible." *Musser v. Bank of Am.*, 964 P.2d 51, 54 (Nev. 1998) (quoting *Royal Indem. Co. v. Special Serv. Supply Co.*, 413 P.2d 500, 502 (Nev. 1966)). *See also Phillips v. Mercer*, 579 P.2d 174, 176 (Nev. 1978) ("A court should not interpret a contract so as to make meaningless its provisions.").

HDMC's position is that the release language at issue unambiguously bars Renton's claims for breach of contract and good faith/fair dealing as to the Dealer Contract with HDMC because (1) HDMC is an "affiliate" of HDCC and (2) the Dealer Contract falls under the broad umbrella of "any other documents, related transactions, relationships, acts or omissions." *See* ECF No. 1, ¶¶ 39-56 & Ex. A. Renton argues that this release language is merely "catch-all" language that is necessarily limited in its scope and refers only to "materials, contracts, transactions, communications, acts or omissions that form the basis and are related to those liabilities." ECF No. 54 at 9-10. *See also id.* at 9 ("The 'Loans' refers to the contractual contingent liabilities between Renton and ESB which were assigned to Scott City and HDCC... The 'amounts and terms outlined in the attached exhibits' refers to the amounts outlined in exhibits ('A' through 'G') attached to the Assignment, all of which are contractual contingent liabilities between Renton and ESB.").

HDMC's interpretation here is reasonable. HDMC and HDCC are both in the same corporate family, *see* note 2, so HDMC can properly be characterized as an "affiliate" under the release clause, a point that Renton does not oppose. *See* AFFILIATE, Black's Law Dictionary (11th ed. 2019) ("A corporation that is related to another corporation by

6
Case 2:20-cv-00311-LA   Filed 09/15/20   Page 6 of 9   Document 62

shareholdings or other means of control; a subsidiary, parent, or sibling corporation."). The provision bars a broad category of legal actions and claims against HDCC, ESB, and any affiliates. And the Dealer Contract, the agreement underlying Renton's claims, can be clearly understood to fall within the broad scope of "any other documents, related transactions, relationships, acts or omissions from the beginning of time to the date of this Agreement" because this language, particularly the use of "any other," "related," and "relationship," presents an exceedingly broad class of interactions. *See* RELATED, Black's Law Dictionary (11th ed. 2019) ("Connected in some way; having relationship to or with something else"); *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting *U.S. v. Gonzales*, 520 U.S. 1, 5 (1997)). *See also, e.g.*, *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 391 (7th Cir. 2008) ("'[R]elated' has a common understanding and meaning and 'covers a very broad range of connections, both causal and logical.'"); *Todd Const., L.P. v. U.S.*, 656 F.3d 1306, 1312 (Fed. Cir. 2011) (explaining breadth of "related" or "related to" in various contexts). Further, the Assignment and Assumption Agreement, the Retail Plan Account Financing Agreement, and the Dealer Contract are all part of a web of complementary contracts Renton made with various affiliates within the Harley-Davidson corporate structure to own and operate this specific Harley-Davidson dealership. Indeed, without the Dealer Contract, Renton's secondary agreements with HDCC and ESB resolved by the Assignment and Assumption Agreement do not even exist. Thus, it is reasonable to interpret the Dealer Contract as a "related transaction" or "relationship" and any claims arising under the Dealer Contract to therefore be waived and released.

Finding HDMC's interpretation reasonable, I now consider whether Renton's competing interpretation is reasonable and renders the release ambiguous. Renton's

7

argument is that the "any other documents, related transactions" language is merely a "catch all" and includes only "materials, contracts, transactions, communications, acts or omissions that form the basis and are related to [contractual contingent liabilities between Renton and ESB]." ECF No. 54 at 9-10. But this interpretation already applies to the immediately preceding language (also extremely broad), which bars claims "by reason of ***any matter, cause or thing whatsoever related*** to this Agreement, the Loans, amounts and terms outlined in the attached exhibits…" ECF No. 52-1 at 4, ¶ 21 (emphasis added). Renton's reading would therefore render the "any other documents, related transactions" language redundant and meaningless.[7] Because contractual language must be interpreted so that each word is given effect and provisions are not rendered meaningless, *see Musser*, 964 P.2d at 54 and *Phillips*, 579 P.2d at 176, I cannot accept this reading. Renton presents several other arguments as to why the scope of the release language should be limited to exclude the Dealer Contract,[8] however these points do not carry weight where Renton has not advanced a reasonable interpretation that both gives at least some effect to the broad release language and restricts its scope to exclude the Dealer Contract. This is not to say that any conceivable transaction between the parties, such as a contract relating to another Harley-Davidson dealership, would necessarily be barred by the broad release language; the case for ambiguity is certainly stronger where relation to the Assignment and Assumption Agreement is more attenuated. *See Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir.

---

[7] Because of the presence of "any other," I read the connecting "or" to be an expanding or alternative "or" as opposed to a clarifying "or" used to rephrase the previous clause. *See id.* ("…by reason of any matter, cause or thing whatsoever related to this Agreement, the Loans, amounts and terms outlined in the attached exhibits ***or*** any other documents, related transactions, relationships, acts or omissions…") (emphasis added).

[8] Specifically, Renton asserts that there is no mention of the Dealer Contract throughout the rest of the contract, the specific language of the preceding clause controls over the subsequent general language, and interpreting the release to bar claims regarding performance of the Dealer Contract does not reflect the intent of the parties, particularly where such a broad release is not in Renton's economic interest. *See generally* ECF No. 54. However, where a release is unambiguous, its meaning is determined "without the introduction of parol evidence designed to limit or expand the meaning of its terms." 29 Williston on Contracts § 73:7 (4th ed.).

8

Case 2:20-cv-00311-LA   Filed 09/15/20   Page 8 of 9   Document 62

1989) ("At some point, of course, a logical connection may be too tenuous reasonably to be called a relationship, and the rule of restrictive reading of broad language would come into play."). But when considering the already wide scope of "any other documents, related transactions, relationships," broadened even further when read with the preceding clause, the Dealer Contract is as close to the Assignment and Assumption Agreement as any matter reasonably proposed as "any other related transaction" or "relationship" could be, forming the bedrock of Renton and HDMC's entire relationship. Taken together, I conclude that this release language encompasses the Dealer Contract, barring Renton's claims and entitling HDMC to summary judgment.

Finally, because I conclude that Renton's action is barred and will grant HDMC summary judgment, I also deny Renton's Rule 56(d) motion, as discovery regarding extrinsic evidence is unnecessary. *See OSF HealthCare Sys.*, 933 F.3d at 866 (district court may deny a Rule 56(d) request due to the apparent futility of the requested discovery). *See also Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2006).

### IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that Defendant's motion for summary judgment (ECF No. 43) is **GRANTED**. Plaintiff's action is barred by the release provision in the Assignment and Assumption Agreement. This case is **DISMISSED**. The Clerk of Court shall enter final judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel discovery (ECF No. 49) is **DENIED** and Defendant's motion to stay discovery (ECF No. 47) is **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2020.

                                             s/Lynn Adelman
                                             LYNN ADELMAN
                                             District Judge